The second and last case today is Four One Zero Zero Zero Four Six People versus Twenty Four Thousand Eight Hundred Fifty Three Dollars. Counsel for the appellate, please. Thank you, Your Honor. May it please the court. Counsel, as I was taught long ago in law school, I introduced myself. I am Charles Mansfield, although I have appeared before each of you a number of times. I represent the state in this NREM for forfeiture proceeding against the Twenty Four Thousand Eight Hundred Fifty Three Dollars in U.S. currency. Decatur police found on James Cleaves the passenger in a car they stopped shortly before 2 a.m. on March 26, 2009. The currency is the defendant. Mr. Cleaves is the claimant. Police seized the currency and the state filed a claim for forfeiture. The state alleged four bases for forfeiting the currency, one for violation of the Cannabis Control Act, two for violations of the money laundering statute, and lastly, one for money laundering based on a violation of the Illinois Currency Reporting Act. At the stop itself, Cleaves told police he got the currency from selling a 1971 Oldsmobile Cutlass. Later that day, and again at trial, he said he got twenty thousand of the dollars from a long-time friend in Decatur to purchase two apartment buildings near Ball State University in Muncie, Indiana. That friend, Daryl Johnson, testified similarly. Four days after the hearing, the court, without stating why, found none of the allegations were sufficiently proved and thus granted claimant's motion to dismiss the state's claim, the state opinion. Our argument is simple. The totality of the evidence presented at the hearing shows that $24,853 was possessed in violation of the money laundering statute and should have been forfeited. What's our standard of review, counsel? The standard is, at the moment, deferential. That goes back to the 2005 decision of the Illinois Supreme Court stating that it would review forfeiture determinations deferentially and not reverse unless it is against the manifest weight of the evidence. What case is that? That's the one on the next page. It is the 1945 North 31st Street Decatur decision. Excuse me. I'm mic'd. I didn't know you needed a microphone, your honor. I don't, but they think I do. Well, I think they are about to learn otherwise, your honor. That's 841 Northeast 2nd at 928 and is cited in both of the state's briefs. Now, it is the state's position that the court here determined there was no probable cause to forfeit. Is there probable cause to forfeit or probable cause to seize? Two different issues, your honor. The seizure occurred at the time of the stop in March. There were, in the state's position, sufficient indicia at that time to seize the currency, to seize it in a reasonable belief that it was associated with criminal activity, either cannabis, drug dealing, or money laundering. What was specifically the probable cause to seize the currency? I'm sorry? What was specifically the probable cause to seize the currency? There were a number of factors. At the stop, it was a traffic stop. They found a blunt outside the car on the driver's side when the driver stopped out. This suggests some cannabis relationship. The arrest, the officer that made the stop said he smelled the odor of burnt marijuana at the stop. So we're starting to build a relationship there with cannabis, the Cannabis Control Act violation. There were materials in the trunk, bags, masks, items of this sort, which further indicate association with cannabis distribution. Now, the money itself was found incident to the arrest of the claimant on a warrant. So the finding of the currency, I think, is not an issue. There's $24,000 some dollars found at 2 o'clock in the morning in currency in two different pockets on the individual. Does someone have a cell phone? Oh, counsel? You just said it on the table. Wait. I'm messing up with the audio. I apologize. I am. Well, may I just sit down and hide now? You're fine, counsel. Thank you, Your Honor. Do you need me to go more into the probable cause to seize? Because you started with what is the standard of review and what are you asking me now to address? Well, actually, I don't think I asked you about the standard of review. I think that was Justice Appleton. All great justices look alike. Proceed with your argument as you see fit. Thank you, Your Honor. And I'll be sure to interrupt you if I think I need to ask you a question. I have no doubts. Thank you, Your Honor. Thank you, counsel. I was headed to burden of proof. And perhaps it is sufficient here to say that under either the Drug Asset Forfeiture Procedure Act or the money laundering statute, the state merely needs to show probable cause to forfeit. And as we all know, that's more than a reasonable suspicion, but less than prima facie and substantially less than preponderance of the evidence. I think it's also important to note that the state needs to establish probable cause to forfeit only at the time of the hearing, not some earlier time. And that's probable cause to forfeit. The federal statutes require that the probable cause determination be established at the time the complaint is filed. So that left then the trial court with the question by the end of the hearing, whether the totality of the evidence showed probable cause to forfeit the currency. The court found it did not and granted defendants motion to dismiss the state's complaint. That leads us then to the two questions that I will present to this court. Did the trial court err? And what is the appropriate standard of review? I've already mentioned that historically it has been deferential. But as we know, as we've known since 1996, when the U.S. Supreme Court in Ornelas adopted a bifurcated standard for reviewing probable cause determinations, that we now use deferential standard for historical facts, witness credibility, things of this sort. But the actual determination of whether probable cause existed or not is reviewed de novo. And the Illinois Supreme Court in Sorensen in 2001 adopted the U.S. Supreme Court's jurisprudence on standard of review. Sorensen was not a forfeiture case, was it? It is not. And neither was Ornelas. These were Fourth Amendment search and seizure issues. But at the risk of offending a poet from early in the last century, probable cause is probable cause is probable cause. And then thus the state respectfully asks this court to adopt the bifurcated standard. I should point out that in the 1945 North 31st Street case, the Illinois Supreme Court, in a footnote, observed that the circuit courts of appeals use either de novo or the bifurcated standard. That has not been adopted in Illinois. It should be. It is appropriate. Now, let me give the claimant credit for having identified the elephant in the room, credibility. His credibility and that of his longtime friend, Daryl Johnson. The state agrees. Credibility was certainly an issue here and apparently a determinative factor. If the court had found Cleaves and Johnson not credible, it surely would have ordered the currency forfeited. It denied the claimant's motion for a directive finding at the end of the state's evidence, which means the state had totally failed to prove probable cause. So the court must have decided that with the claimant's evidence, the state's showing of probable cause was defeated. So the fact the court did not forfeit the currency must mean it found the claimant and Johnson credible, their explanation for the source of the currency and for how it was transferred. Now, it also appears, and we don't know because the court did not explain its decision and there's no obligation on it, of course, to have done so. It appears the court focused on and accepted the claimant's argument that the state failed to show the currency originated from drug transactions, cannabis transactions, controlled substance transactions. After all, the court did deny the state's claim for forfeiture under the Drug Asset Forfeiture Procedure Act. Nevertheless, the currency still could be criminal property, criminal assets, properly subject to forfeiture. This leads then to the state's two arguments. First, if claimant and Johnson actually did what they told the court they did, the currency had been in a structured financial transaction on at least two separate occasions. And at the time of the stop, it was in a third structured transaction, all in violation of the Illinois Currency Reporting Act. Thus, even if the currency were not drug or drug-related assets, it should have been forfeited pursuant to count four of the state's claims, money laundering, financial transaction designed to avoid reporting requirements of state law. Counsel, your argument seems to suggest if I go to my bank and take out $4,000 in cash, like later on today, and then I do the same thing next week, and the same thing the following week, that I have in some way violated the law of the state of Illinois. No. Is that not what you're arguing here? No. What I'm arguing is that the pattern of withdrawals shows an intent to avoid the reporting transaction, the currency reporting requirement. That if, for example, you were withdrawing $4,000 on Monday and Wednesday and Friday, purely for the purpose of avoiding the reporting requirement, if you withdrew $12,000, then yes, that is a violation of the Currency Reporting Act. So as in almost all criminal matters, except traffic, intent is a factor here. Indeed, let me read you my apologies. Are you saying I have to justify to the state why I've chosen to take $4,000 out of my account on three different occasions? Oh, you can. Sure. Sure. But if you want to keep the state from latching on to your money, then you need to realize that a structured transition comprises eight components, and the one you're really asking me about is the one in section 7B8, 7B8 of the Currency Reporting Act. That is, a person structures a transaction if he is, da-da, da-da, da-da, for the purpose of evading the reporting requirements of this act. Now, if you're asking can you be proven guilty, then it requires a substantial amount of evidence. But to hold on to your currency, the state only needs to establish probable cause to forfeit. Many of us. I guess I'm having a hard time believing how I could even be charged under my hypothetical, let alone be found guilty. You probably couldn't. Well, you probably wouldn't. But your argument seems to be that if Justice Turner did what he suggested and took $4,000 out of his bank account three times to accumulate 12, he could never be found guilty of violation of the act, but the state would be able to forfeit the $12,000. Not necessarily never be found guilty. That's even worse. I know he's your friend, and I know you want to keep him out of the slammer, but. My point is that the penalty for a violation of this act would seem de minimis compared to the forfeiture of $12,000. Imprisonment on a Class II felony is not de minimis. Well, the likelihood of that actually occurring is de minimis. Sure. And again, it is a fact-intensive issue. What was the purpose of withdrawing four, four, and four? At one time, I loaned one of my two sons money for the down payment on a house. I withdrew money from a couple of different accounts, put it into a checking account, and then withdrew an amount that I'm sure was reported. It wasn't a lot, but it was over $10,000. And there is a note on the loan, and that note is recorded. So in your scenario, Justice Turner, to stay out of the slammer and to keep the money, you simply would need to identify a legitimate purpose for the transactions. Mr. Mansfield, doesn't the Reporting Act apply to financial institutions and not to individuals? That is correct, with one profound exception set forth in the Act itself. That is the definition in Section 3D, as in Dastardly Deed, of financial institution. Financial institution has 18 meanings, 17 of which are businesses, credit unions, currency exchanges. The 18th is, and I quote, person. Person involved in real estate closings, settlements, sales, or auctions. When did the real estate closing take place? There was no closing here. There was a hoped-for closing. There was an anticipated sale or settlement. Okay, but where does it say in 18 that it applies to anticipated sales or hopeful sales or maybe a closing? Okay, good question. Under the money laundering statute, the offense is structuring. Counsel, I'm just advising you have one minute left. Go ahead, you have one minute left. I just wanted to let you know. The money laundering statute, which I also have here, says that in Section A1.5BII, money laundering occurs when a person transports, transmits, transfers, attempts to transport, transmit, or transfer a monetary instrument to avoid a transaction reporting requirement under state law. So the argument is that the transfer of currency from Johnson to Cleves of $20,000 was an attempt to avoid the reporting requirements of state law. They succeeded. He was then going to go to Indiana, carrying the currency across state lines, and purchase an apartment building for perhaps $25,000 without any of the currency exchanges ever being reported. Counsel, you're out of time. You will have rebuttal. Thank you, Your Honor. Now, you want me to reach this up about 10 feet in the air for you, Counselor? Good morning. My name is Jeff Justice. My favorite movie is Jerry Maguire, and the famous line from that movie is, Show me the money. What this case is about is show me the felony. Three of the four counts require the state to say this money was related to unlawful or criminal activity. They couldn't do it at trial. They didn't do it in their brief. They didn't do it in their reply brief. The best they could do was what the police officer, the detective, did, which says a backpack that has duct tape, ready-to-eat meals, some masks, dust masks for construction-type workers, and some Ziplocs in it is evidence of drug distribution. The state didn't argue that in their closing arguments. The state didn't argue that in their brief until the reply. The judge thought it was ridiculous. The police officers, you asked me, okay, or asked Mr. Mansfield, why was this stuff seized? The patrol officer said, I seized it. I didn't think there was any illegal activity. I didn't have any evidence of any money laundering. But I was going to make him tell me why this money, he had this money. I thought they found some cannabis in the driver's pocket. They found, after he was arrested, but remember, this is the passenger. The claimant is the passenger. The police officer said, the detective who made the final decision was. . . Well, the officer said he smelled burnt cannabis, and then they found cannabis. Right, I agree with you. The driver was smoking a joint, so what? How does that prove that this money is illegal drug money? And they didn't arrest, they didn't seize the car. They admitted that the car was totally unrelated to the claimant. It was just a friend who picked him up for a couple of drinks. And the backpack was unrelated in any way to the claimant. So they had no evidence at all when they seized it. And they admitted that. So now the state. . . Can I interrupt you one second, Mr. Justice? Yes. I'm a little unclear on this. Would the blunt that was found under the car on the driver's seat, on the driver's side of the car, be enough to support probable cause for the seizure versus the forfeiture at the scene? Is that enough to give the police probable cause to seize the currency at the scene? And is there a difference between probable cause to seize and probable cause to forfeit? The seizure is dependent upon who the money was found in possession of. If it was found in possession of the driver, maybe. But in the possession of an uninterested party who was a passenger who had money on his person, I would suggest that it is no different than Justice Turner's example. If he had $12,000 in his pocket. But didn't Justice White, or excuse me, Judge White, find that there was probable cause on count one, which I understand is not the subject of this appeal? And then she found that the claimant rebutted that presumption there. Yes. By preponderance of the evidence. She did. So I'm trying to get straight in my own head then. Was there probable cause at the scene to seize the money? Do you agree with Judge White's holding? Because she did find under count one there was probable cause to seize the money. I do not agree because of the relationship of the money to who the person was that was associated with the marijuana. There was no association. And the police officers admitted this on cross-examination, that there was no association between the passenger who possessed the money and the marijuana. And any suggestion of marijuana. And so, yes, unfortunately I disagree with even her initial finding. But I think this is a situation where I have a client. Would it matter if instead of $24,000 was at issue, instead it was $240,000 or $2.4 million? Would that make any difference? I'm stumped because I can't – I'm trying to figure out what the inference is you're asking me to draw or not draw. I'm asking you if the claimant, instead of having $24,000 in his possession, had $2.4 million in cash in his possession. Would that make any difference? The answer, in my opinion, is no. If the claimant is smart enough to say when the cop says, where'd you get this money, it's none of your damn business. And that ends the subject matter. But what happened in this case, like every citizen who gets confronted by a police officer, they try to explain. And he created inconsistencies in his explanation of the source of the money. And Judge White was then asked to deal with that. And what was interesting is that it got brought up in the first part of the case, was the elephant in the room was credibility, and it related to Mr. Johnson and Mr. Cleaves. Whoa, wait a minute. It doesn't stop there. It has to do with the police officers as well and judging their credibility. The patrol officer was very straightforward. He said, I seized it because I wanted an explanation. The detective, the street crime, the drug cop who deals with this stuff all the time, was much more evasive. And basically, he started coming up with reasons. And I said, okay, what are those reasons? What crime? Where did this money come from? And all he could say was it was suspicious because, and I quote, normal people don't carry $24,000 in cash. So that made it suspicious. Therefore, he seized it, directed that it be continued to be seized. So now the state presents this evidence in front of a judge, and when he is cross-examined about the idea of, okay, what does this money prove? Because money laundering is washing bad money with good money. So you've got to prove where the bad money came from or some evidence of it. And they couldn't do it. He kept saying it was suspicious. Their own cases say that suspicion is not probable cause. And that's the problem. Now, they've gone to the last desperate hold in this thing, and that is we have, they want to say that this was an attempt to avoid reporting money, dealing with an institution. And basically their argument is the possession of cash is a crime. You can't have cash. You can't do a real estate transaction unless you go through a bank and use an institution. They make that statement in their brief. My client, this is March of 2009. He's an entrepreneur. He sees a business opportunity. The housing market is terrible. So he wants to buy some houses. And just like the guy that comes to fix your driveway, is this going to be a cash job or are you going to write me a check? And is there a price difference? We know that you can buy things cheaper for cash sometimes. Between individuals, that is not illegal. And what they're doing, and what he, I presented the financial records, the bank accounts, every single transaction from the source of the money, Mr. Johnson, is a way of exhibits. There are hundreds of ATM withdrawals. This is a man that works 50, 60 hours a week at ADM, a hot, hard place to work. There are transactions. There are $200, $300, $500 cash transactions in these exhibits. There's a couple of $1,000 withdrawals. And when he got his income tax return of $4,500 from working probably 2,500 to 3,000 hours, he took $3,000 of his income tax out in cash to treat himself. And he testified that I accumulated this cash over a large period of time. And when his seventh grade best friend came and said, I got a business opportunity, he gave it to him and said, Invest it, make us some money. There's nothing wrong with that. And what they're trying to do is what Justice Pope focused on, is to say, wait a minute, you get all the way over to Indiana and you're supposed to close this transaction. The seller is now required to report this transaction. That's not what that section says. That section says the title company or the real estate office or the auctioneer who closes the transaction has to report it. The seller doesn't. A seller and a buyer can conduct whatever they want in cash. And that's the weakness of their argument from the beginning. I'm done unless you have questions.  Seeing none. Rebuttal, please. Thank you. Thank you, your honors. I'm trying to decide whether one of counsel's argument is an elephant or a pink elephant. So I won't go there unless you take offense. And I certainly don't mean any. He's a very accomplished litigator. Under the money laundering statute, there is no requirement that as pled the state show a connection to underlying criminal activity of drug dealing. Under the money laundering act, section A1, there is a requirement that the financial transaction involve criminally derived property. Under section A2, there is a requirement that there be a specified criminal activity. Under the one the state pled, section A1.5, forfeiture money laundering occurs for purposes of forfeiture when the person transports, transmits, or transfers, attempts to transport, transmit, or transfer a monetary instrument to avoid the transaction reporting requirement under state law. The other argument the state made in its briefs is that the claimant, through his, shall I say, misrepresentations to police and the differences between what the simple inconsistency in the story he told at the stop, the profound differences between the stop story and the story to police 12 hours later and to the court nearly nine months later, identify he was trying to hide money. He was trying to launder money. Or it could be he was an idiot. All of the above? As opposed to none of the above. I mean, you know, it is not uncommon for folks who are stopped by the authorities to dissemble in some fashion because they're scared, they feel under tremendous pressure, they're afraid, and then in the light of day, after thinking about it, saying, you know, that was really dumb and here's the true fact. And he came and testified to the true fact and, quite frankly, had documentary evidence to prove the true fact. Up to about $16,000 worth of withdrawals. I think in terms of the hitting $20,000, I believe, if I recall the trial record correctly, there was about a $3,500 or $4,000 underage that he didn't have and couldn't explain. And I'm not talking about the money in the glove compartment, which, by the way, claimant variously told had said he started at $5,000 or was $4,600 depending to whom he was talking. And there's also one more interesting unexplained fact. He was found with $47 less than $6,000 in one pocket. He was found with $14,000 plus $300 in the other pocket. But he said that what he did is he got $20,000 from Johnson, $6,000 he put in one pocket, $14,000 he put in the other pocket. Now, arguably, he could have spent part of the $6,000 for drinks, but where did the extra $300 come from? At home, when I'm doing laundry, my socks disappear. Perhaps when claimant is laundering money, cash appears. So, therefore, the state respectfully asks you to make the judgment, reverse its order, and remand the cause with instructions to direct the money Thank you, counsel. The case is submitted. The court stands in recess until further call.